# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

CMFG LIFE INSURANCE COMPANY,
CUMIS INSURANCE SOCIETY, AND
MEMBERS LIFE INSURANCE COMPANY,

     Plaintiffs,

       vs.

CREDIT SUISSE SECURITIES (USA) LLC,

     Defendant.

Case No. 14-cv-249

---

## CUNA MUTUAL'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR LEAVE TO AMEND ITS COMPLAINT

---

CUNA Mutual[1] seeks leave to amend its complaint specifically to add an allegation of intentional misrepresentation. The detailed facts CUNA Mutual pleaded in its original complaint already support such a claim—the evidence demonstrating Credit Suisse's knowledge of the shoddy loans it included as backing for securities sold to CUNA Mutual is well-catalogued in CUNA Mutual's 143-page complaint—and CUNA Mutual merely seeks to supplement these factual allegations with an express allegation of intentional fraud.

In our system of notice pleading, it is the facts, not the legal theories, that matter.[2]  But in an

---

[1] "CUNA Mutual" is the collective reference to three Plaintiffs in the underlying case:  CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company.

[2] See *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint.") (internal quotations omitted);  *Alden Mgmt. Servs., Inc. v. Chao,* 532 F.3d 578, 582 (7th Cir. 2008) ("Courts don't hold a party to its first legal theory."); *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute [or legal theory], a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."); *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1384 n.2

abundance of caution, and in light of recent rulings by this Court on the applicable statute of limitations in similar litigation, CUNA Mutual formally seeks to allege that Credit Suisse committed intentional fraud.  Specifically, this court recently held that rescission claims based on negligent or strict  misrepresentations are governed by the Wisconsin statute of limitations for "an action upon any contract," Wis.  Stat. Ann. § 893.43, while claims for rescission based on intentional misrepresentation are governed by the fraud statute.  *See*, *e.g.*, *CMFG Life Ins. Co. v. UBS Sec.*, No. 13-cv-576-wmc, 2014 WL 2986472,  at *1, *5-6 n.13 (W.D. Wis. July 2, 2014).  For the reasons stated in its opposition to the motion to dismiss in *UBS*, CUNA Mutual believes that the Court should apply the fraud statute of limitations to all its current claims.  In light of the Court's ruling, however, CUNA Mutual seeks leave to amend its complaint to further buttress what the facts already pleaded demonstrate:  that Credit Suisse intentionally misrepresented the quality of the loans it securitized and sold to CUNA Mutual.

At this early stage of litigation—before CUNA Mutual has even responded to Credit Suisse's motion to dismiss—courts routinely grant motions to amend the pleadings.  And the proposed amendment will not prejudice Credit Suisse, as the current complaint already placed it on notice that CUNA Mutual's claims were based on its fraudulent behavior.  In the amendment, CUNA Mutual seeks to add only a few additional allegations and to remove the prior allegation that CUNA Mutual is not specifically alleging fraud.  CUNA Mutual does not seek to change its core theory of recovery—it will still assert the same claim for contractual rescission, with the same elements, except for one additional allegation:  that Credit Suisse's fraud was intentional.

Justice requires that CUNA Mutual be granted leave to amend.  CUNA Mutual alleges that

---

(N.D. Ill.  1996) ( "[Plaintiff's] purely voluntary and nondeterminative choice to structure its Complaint in terms of … separate counts in no way limits it to those … specific legal theories.") (citations  omitted); *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, No. 10 C 4382, 2013 WL 466439, at *1  (N.D. Ill. Feb. 7, 2013) ("[T]he federal pleading system deals in *claims*, not in the state law concept of  'causes in action.'").

Credit Suisse engaged in systematic fraud that infected every certificate it sold to CUNA Mutual.  It would be unjust to forbid CUNA Mutual from proceeding on a substantial portion of its case, particularly when CUNA Mutual has already pleaded detailed facts supporting an inference of intentional fraud.  Thus, CUNA Mutual respectfully requests leave to amend its complaint specifically to add allegations of intent.

**RELEVANT BACKGROUND**

Credit Suisse moved to dismiss CUNA Mutual's complaint on June 16, 2014, arguing that the Wisconsin contract statute of limitations, Wis. Stat. Ann. § 893.43, barred CUNA Mutual's claims because—unlike the fraud statute—it contains no discovery rule.  *See* ECF No. 13 at 11.  In related actions filed by CUNA Mutual, other RMBS underwriters made similar timeliness arguments.[3]  This Court recently issued several opinions in those related cases, accepting the defendants' arguments that the contract statute of limitations should apply to CUNA Mutual's claims for contractual rescission based on negligent misrepresentation, strict misrepresentation, and mistake, as well as its claims for unjust enrichment.  *See, e.g.*, *CMFG Life Ins. Co. v. UBS Sec.*, No. 13-cv-576-WMC, 2014 WL 2986472 (W.D. Wis. July 2, 2014).

This Court interpreted "(admittedly) tangled and arguably inconsistent law" to hold that under Wisconsin law, claims for rescission based on unintentional misrepresentation are governed  by the Wisconsin contract statute, which runs from the time of "breach" regardless of whether the

---

[3] Before the related actions were filed, CUNA Mutual filed a similar suit against RBS Securities, Inc. in this Court.  In that case, the parties agreed that Wisconsin's statute of limitations for fraud applied.  *See CMFG Life Ins. Co. v. RBS Sec. Inc.*, No. 12-cv-037-WMC, 2013 WL 4483068, at *3  (W.D. Wis. Aug. 19, 2013).  On August 19, 2013, the Court denied RBS's motion to dismiss CUNA Mutual's rescission claim (among other rulings). *Id.* at *12-13.  Applying the fraud statute's discovery rule, the Court deemed all of CUNA Mutual's rescission claims timely, reasoning that "it is one thing to know that the securities were not making their expected returns, or had even lost long term value in the eyes of investors, and quite another entirely to have cause to suspect that RBS had materially misrepresented the characteristics of the collateralized loans and its own due diligence."  *Id.* at *4.  Judgment has since been entered in the RBS case.

aggrieved party knew or had reason to know of the breach.[4]   *UBS*, 2014 WL 2986472, at *1, *5.  But in so holding, the Court acknowledged that CUNA Mutual's claim for rescission would be governed by the fraud statute if CUNA Mutual could adequately plead a claim for rescission based on *intentional* misrepresentations. *UBS*, 2014 WL 2986472, at *6 n.13.   Moreover, the Court noted that such a claim would not run afoul of the economic loss doctrine, because it would still seek a remedy permitted by contract law, despite being grounded on fraud.  *Id.* at *1, *6 n.13.  For these reasons, CUNA Mutual seeks to add a specific allegation of intentional fraud to its complaint against Credit Suisse.

CUNA Mutual already pleaded myriad allegations supporting an intentional fraud claim, including that:

- Credit Suisse hired a professional third-party underwriting firm—Clayton Holdings—to re-underwrite a random sample of its securitization loan pools to ensure that the loans complied with underwriting guidelines or had sufficient compensating factors to justify the credit decision (ECF 1 at ¶¶ 493-508);

- The reunderwriting routinely revealed that a significant number of loans in the random sample were materially defective (known as "Event 3" loans), meaning that the loans did not comply with underwriting guidelines and were without sufficient compensating factors to justify the loan (*Id.* ¶¶ 500-02);

- Despite this knowledge, Credit Suisse routinely ordered that the defective loans be "waived" into the pools, which were then securitized.  In fact, Clayton's data revealed that Credit Suisse waived in *33%* of the loans found to be materially defective (*Id.* ¶¶ 352–55).  After learning of these re-underwriting results, Credit Suisse made misrepresentations in the Offering Documents that the loans complied with underwriting guidelines, despite its affirmative decision to include the materially defective loans in the final loan pools backing the RMBS sold to investors, including CUNA Mutual (*Id.* ¶¶ 505-08);

- Credit Suisse "knew and understood" that CUNA Mutual entered into the RMBS transactions based on the understanding and expectation that the loans complied with underwriting guidelines (*Id.* ¶ 52);

---

[4] CUNA Mutual has not alleged that Credit Suisse "breached" any contract, only that the transaction between the parties is void because it was induced by Credit Suisse's misrepresentations.

- Credit Suisse routinely securitized loans despite having knowledge through automated valuation models ("AVMs") that the appraisals were inflated, rendering false its disclosures as to the loan-to-value ratios ("LTVs") of the  loans (*Id.* ¶ 353).

While these previously pleaded, particularized allegations support a claim for fraud, and CUNA Mutual even characterized intentional fraud as "likely," in its original complaint CUNA Mutual stated that it was not "specifically alleging that Credit Suisse committed fraud," because "Credit Suisse's misrepresentations are actionable even if negligently or innocently made." *Id.* ¶ 129.  At the time of the original complaint, CUNA Mutual had no reason specifically to plead the additional element of intent; intent was not a necessary element of its claim for rescission and, as this Court recognized in *UBS*, no state or federal Wisconsin court had previously held that a claim for rescission based on negligent or strict misrepresentation was governed by the contract statute of limitations, Wis. Stat. Ann. § 893.43. Moreover, the Defendant in *RBS* had effectively conceded, by failing to argue to the contrary, that the fraud statute of limitations, Wis. Stat. Ann. § 893.93(1)(b), applied to CUNA Mutual's claims.  Given the Court's recent rulings, however, CUNA Mutual now seeks leave to amend its complaint to specifically allege that Credit Suisse made the relevant misrepresentations intentionally.

## ARGUMENT

A party seeking to amend a complaint more than 21 days after the filing of a motion to dismiss must move for leave to file the amended complaint, unless the adverse party consents to the amendment.  Fed. R. Civ. P. 15(a).  Leave to amend, however, "should [be] freely given . . . when justice so requires."  *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (presumption in favor of allowing amendment is a "mandate . . . to be heeded").  In deciding whether to permit amendment, courts may consider several factors, including whether the opposing party will suffer undue prejudice as a result of the amendment; whether the moving party has delayed unduly or has acted in bad faith; and whether the amendment is clearly futile.  *See Dubicz v. Commonwealth Edison Co.*,  377 F.3d 787, 791 (7th Cir. 2004).

None of these factors counsel in favor of denying CUNA Mutual leave to file its amended complaint. Credit Suisse will suffer no prejudice as a result of the amendment; CUNA Mutual has sought leave to amend diligently and in good faith; and the amendment CUNA Mutual seeks is not futile.

### A. Credit Suisse Will Suffer No Prejudice Because Discovery Has Not Yet Begun and Because It Was Already on Notice of the Facts Supporting CUNA Mutual's Intentional Fraud Claim.

Credit Suisse will suffer no prejudice as a result of CUNA Mutual's amendment. This case is still in its infancy: discovery has not yet begun, and CUNA Mutual has not yet responded to Credit Suisse's motion to dismiss the complaint. The addition of a handful of allegations cannot possibly prejudice Credit Suisse.

The foundational facts supporting a fraud claim are contained in CUNA Mutual's original complaint. Moreover, CUNA Mutual does not seek to allege a new legal claim: it continues to pursue a claim for rescission based on Credit Suisse's misrepresentations. The proposed amendment merely supplements and clarifies CUNA Mutual's previous allegations, which in turn support a conclusion that Credit Suisse knowingly or recklessly misrepresented both the characteristics of the collateral backing the certificates it sold to CUNA Mutual and the quality of its due diligence related to the offerings. *See  Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (abuse of discretion to deny motion for leave to amend where "[t]here was no new theory of relief, but only a clarification . . . and a showing of additional factual details").

### B. CUNA Mutual Has Acted Diligently and in Good Faith.

CUNA Mutual has acted expeditiously to amend its complaint in response to this Court's recent rulings regarding the statute of limitations applicable to its claims. In that regard, this case is similar to *Issen v. GSC Enterprises, Inc.*, 522 F. Supp. 390 (N.D. Ill 1981). There, the plaintiff moved to amend his complaint for securities fraud to include a specific allegation of *scienter*, which—after the

plaintiff filed suit and the deadline to amend the pleadings had expired—the Supreme Court held was a necessary element of the claim. *Id.* at 393-94. In granting the plaintiff leave to amend, the court noted that the amendment was warranted by the new ruling and the relatively minor impact of adding a *scienter* allegation to the case:

> The amendment does not contain an entirely new claim or theory nor should it entail a substantial amount of additional discovery, if indeed it generates any additional discovery at all. The primary reason for the amendment is to take account of developments in federal securities law since the case was originally docketed and to formally plead issues that the parties have implicitly acknowledged to be part of this case for some time.

*Id.* at 394.

Here, just as in *Issen*, CUNA Mutual seeks specifically to allege intentional fraud to account for developments in the law regarding the applicable statute of limitations. While this Court's recent statute of limitations rulings may not, strictly speaking, constitute a "change" in the law, they addressed a point that no federal or state Wisconsin court appears previously to have addressed, and required interpretation of an "(admittedly) tangled and arguably inconsistent" area of the law. *UBS*, 2014 WL 2986472, at *5. Moreover, CUNA Mutual's original complaint was filed after the Court's decision in *RBS*, where the defendant conceded that the fraud statute of limitations governed CUNA Mutual's claims for rescission. Had CUNA Mutual anticipated, when it filed its complaint, that the Court might apply different statutes of limitations to claims for contractual rescission depending on whether they were predicated on intentional, negligent, or strict misrepresentation, CUNA Mutual would have alleged fraud with particularity at that time. As soon as these issues crystallized, CUNA Mutual brought this motion, diligently and in good faith.

## C.    CUNA Mutual's Amendment Is Not Futile.

CUNA Mutual has sufficiently pleaded a claim for rescission based on intentional misrepresentations, and the proposed amended complaint buttresses the existing complaint with

further allegations supporting an inference of intent.  The complete elements for intentional

misrepresentation are:

> 1) the defendant made a factual representation; 2) which was untrue; 3) the defendant
> either made the representation knowing it was untrue or made it recklessly without
> caring whether it was true or false; 4) the defendant made the representation with
> intent to defraud and to induce another to act upon it; and 5) the plaintiff believed the
> statement to be true and relied on it to his/her detriment.

*Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005) (internal quotation marks
omitted).

Under Rule 9(b) of the Federal Rules of Civil Procedure, claims for intentional fraud must

include allegations that "state with particularity the circumstances constituting" fraud. Fed. R. Civ. P.

9(b).  This requirement is met where a plaintiff pleads the "who, what, when, and where" of the

alleged fraud.  *First Years, Inc. v. Munchkin, Inc.*, No. 3:07-cv-00558-BBC, 2008 WL 4682553, at *2

(W.D. Wis. Feb.  5, 2008) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992)).

The requisite mental states—intent, knowledge, or recklessness—may, on the other hand, be alleged

"generally," Fed. R. Civ. P. 9(b), which courts have interpreted to mean "'in a conclusory fashion.'"

*Riley v. Vilsack*, 665 F. Supp.  2d 994, 1001 (W.D. Wis. 2009) (quoting *Burks v. Raemisch*, 555 F.3d 592,

594 (7th Cir. 2009)); *see also  First Years*, 2008 WL 4682553, at *3 (holding that if a counterclaim is

amended to allege intent, "no  'evidence' is required at this point").

CUNA Mutual's 143-page complaint already contains the "who, what, when,  and where" of

Credit Suisse's misrepresentations. Indeed, it contains detailed allegations about  compliance with

underwriting guidelines and Credit Suisse's due diligence process on a deal-by-deal basis.  The

complaint, moreover, includes numerous, detailed, and compelling allegations establishing Credit

Suisse's intent to mislead.  Those allegations include the facts that Credit Suisse hired a re-

underwriting service—Clayton—to re-underwrite random samples of the securitization pools to

ensure the loans materially complied with guidelines; that Credit Suisse identified a significant

number of loans that were "Event 3" loans, meaning they violated underwriting guidelines and

lacked sufficient compensating factors; that Credit Suisse ordered up to 33% of those loans to be "waived" into the securitization pools; that, even after learning of these re-underwriting results, Credit Suisse misrepresented in the Offering Documents that the loans complied with underwriting guidelines; and that Credit Suisse knew via AVMs that the LTVs of the loans were often falsely inflated. ECF No. 1 at ¶¶ 52, 353, 493-508.

On similar facts, courts have held plaintiffs sufficiently pleaded fraud against other underwriter defendants. For example, in *Dexia SA/NV v. Bear, Stearns & Co.*, 929 F. Supp. 2d 231 (S.D.N.Y 2013), allegations that Bear Steams instructed Clayton to waive materially defective loans into the securitization pools supported a claim for intentional fraud:

> The Amended Complaint also pleads facts suggesting defendants knew that the certificates were backed by loans originated in violation of the stated underwriting guidelines, including loans that the defendants themselves "waived in" despite their nonconformity, and that the appraisals were not conducted according to industry standards, even if the defendants themselves were not the originators of the loans. "Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts . . . ." *SEC v. Mudd*, 885 F. Supp. 2d 654, 667 (S.D.N.Y. 2012) . . . .Thus, the Court finds that plaintiffs have adequately pleaded that they have suffered damages arising from defendants' alleged fraud.

*Id.* at 242-44 (citation omitted; alterations in original).

Similarly, in *Federal Housing Finance Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476 (S.D.N.Y 2012), allegations that Clayton informed JPMorgan that 27% of the loans in its securitization pools were Event 3s—*i.e.*, outside of guidelines and without sufficient compensating factors—and that JPMorgan nevertheless waived 51% of those loans into the pools, supported a claim for intentional fraud: "It can hardly be disputed that, taken together, the allegations above adequately plead that JPMorgan acted with fraudulent intent in misrepresenting the underwriting standards that governed the Supporting Loans." *Id.* at 492-93. *See also Phoenix Light SF Ltd. v. ACE Sec. Corp.*, 975 N.Y.S.2d 369, at *7 (N.Y. Sup. Ct. Apr. 24, 2013) ("In sum, the allegations that Deutsche Bank made false representations in the RMBS offering materials that flatly contradict the

reality depicted in Clayton's report to induce plaintiffs to purchase RMBS are sufficient to state a claim for fraud and fraudulent inducement.").

 Similar complaints alleging common-law fraud have also been affirmed.  *See*, *e.g., Deutsche Zentralgenossenschaftsbank AG v. Morgan Stanley*, No.  654035/2012 (N.Y. Sup. Ct. June 10, 2014) (attached as Ex. C); *Bank Hapoalim B.M. v. Morgan  Stanley*, No. 653036/2012 (N.Y. Sup. Ct. Apr. 22, 2014) (attached as Ex. D); *Metropolitan Life Ins. v. Morgan Stanley*, No. 651360/2012, 2013 N.Y. Misc. LEXIS 3056 (N.Y. Sup. Ct. Mar. 13, 2013).  The  *Metropolitan Life* complaint alleged that "Morgan Stanley knew about and ignored deficiencies in the  underlying loans [and] deliberately manipulated the due diligence process to conceal deficiencies in the loans…," which sufficiently supported a finding of *scienter*.  2013 N.Y. Misc. LEXIS 3056 at *34-35.  The court found that, "[i]n a case involving RMBS, 'the allegations of the mortgage loans' material and pervasive non-compliance with the Seller's underwriting Guide and the mortgage loan representations are sufficient non-compliance from which Defendant's scienter can be inferred.'"  *Id.* at *33 (citations omitted).

 Similarly, in *Bank Hapoalim*, allegations that Morgan Stanley falsely represented in offering documents that loans conformed to underwriting guidelines sufficiently supported a fraud claim. Ex. D at 44.  Morgan Stanley claimed that the complaint did not support scienter, but the court stated that this "ignore[d] the role of the Morgan Stanley entities in the securitizations."  Thus, "inferences as to Morgan Stanley's knowledge as to both its own and outside originators' violations of underwriting standards may reasonably be drawn" because of the alleged "pervasiveness of the violations." *Id.*; *see also Deutsche Zentralgenossenschaftsbank AG*, Ex. C at 39 (allegations of misstated LTV ratios, owner occupancy levels, compliance with underwriting standards, credit ratings, etc., "adequately plead actionable misrepresentations that support the fraud cause of action"); *cf. Assured Guaranty Mun. Corp. v. RBS Sec., Inc.*, No. 1:13-cv-02019 (S.D.N.Y. Mar. 26, 2014) (attached as Ex. E)

(allegations of RBS waiving in defective loans identified by Clayton and longstanding dealings with originators supported fraud claim).

The facts pleaded in CUNA Mutual's Amended Complaint are at least as strong. Therefore, CUNA Mutual can (and has) sufficiently pleaded a claim for rescission based on intentional fraud, and its requested relief is not futile.[5] CUNA Mutual's claim for rescission on the ground of intentional misrepresentation is also not barred by any statute of limitations that could conceivably apply. As this Court recently held, such claims are governed by the Wisconsin fraud statute of limitations, Wis. Stat. Ann. § 893.93(1)(b). *See UBS*, 2014 WL 298642, at *6 n.13. That statute allows a plaintiff the benefit of the discovery rule plus six years. *See RBS*, 2013 WL 4483068, at *4. Because the discovery rule applies, there is, at the very least, a disputed issue of fact as to when CUNA Mutual's claims accrued, which cannot be resolved at this stage of the litigation.

## CONCLUSION

CUNA Mutual respectfully requests it be granted leave to amend its complaint specifically to assert a claim for rescission on the ground of intentional misrepresentation.

DATE: July 30, 2014

/s/ Silvija A. Strikis
Silvija A. Strikis (*pro hac vice*)
Scott K. Attaway (*pro hac vice*)
Whitney Cloud (*pro hac vice*)
Kellogg, Huber, Hansen, Todd,
   Evans & Figel, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
sstrikis@khhte.com
sattaway@khhte.com
wcloud@khhte.com

---

[5] Nor does the economic loss doctrine bar CUNA Mutual's claims. CUNA Mutual has not changed its legal theory—it still seeks contractual rescission, which the Court has recognized does not trigger the economic loss doctrine, even if based on intentional misrepresentations. *See UBS*, 2014 WL 2986472, at *1, *6 n.13.

Stephen M. Tillery (*pro hac vice*)
Greg G. Gutzler
Tamara M. Spicer
Steven M. Berezney
Michael E. Klenov
John C. Craig
Garrett R. Broshuis
Korein Tillery, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
stillery@koreintillery.com
ggutzler@koreintillery.com
tspicer@koreintillery.com
sberezney@koreintillery.com
mklenov@koreintillery.com
jcraig@koreintillery.com
gbroshuis@koreintillery.com

George A. Zelcs (*pro hac vice*)
Korein Tillery, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com

Peggy A. Lautenschlager
Bauer & Bach, LLC
123 East Main Street, Suite 300
Madison, WI 53703
(608) 260-0292
lautenschlager@bauer-bach.com

*Counsel for Plaintiffs*