IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CMFG LIFE INSURANCE COMPANY,
CUMIS INSURANCE SOCIETY and
MEMBERS LIFE INSURANCE COMPANY,

                   Plaintiffs,                  OPINION & ORDER

    v.

                                            14-cv-249-wmc

CREDIT SUISSE SECURITIES (USA) LLC,

                   Defendant.

This case is one of several brought by plaintiffs CMFG Life Insurance Company, CUMIS Insurance Society and MEMBERS Life Insurance Company (collectively, "CUNA Mutual") that seek contractual rescission of purchases of residential mortgage-backed securities, or "RMBS," on the grounds of misrepresentation. In this opinion, the court takes up CUNA Mutual's motion to stay (dkt. #35) and motion to amend its complaint (dkt. #24). Because the court concludes that CUNA Mutual may amend with respect to its claims for rescission on the grounds of intentional misrepresentation, the motion to dismiss (dkt. #12) filed by defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") will be denied, although the court will grant the request to strike CUNA Mutual's jury demand.

MOTION TO STAY

CUNA Mutual first moved to stay this action pending an appeal in one of the related cases, *CMFG Life Insurance Co. v. RBS Securities, Inc.*, No. 12-cv-037-wmc, 2014 WL 3696233 (W.D. Wis. July 23, 2014), *appeal docketed*, No. 14-2904 (7th Cir. Aug. 28, 2014). According to CUNA Mutual, the *RBS* appeal will resolve issues that "bear directly" on this

case, including the statute of limitations, the legal standard concerning alleged misrepresentations by a securities underwriter, issues of reliance and the question of an underwriter's responsibility for statements in securities offering documents.  Credit Suisse opposes the stay, arguing that discovery has already been stayed per the agreement of the parties and that the only effect of a formal stay would be to delay threshold issues that the *RBS* appeal will not address.

When deciding whether to stay an action, the court must "balance interests favoring a stay against interests frustrated by the action in light of the court's strict duty to exercise jurisdiction in a timely manner."  *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (quoting *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (internal quotation marks omitted)).  In conducting that balancing test, courts frequently consider:  whether the litigation is at an early stage; whether a stay will unduly prejudice or tactically disadvantage the non-moving party; whether a stay will simplify the issues and streamline the trial; and whether a stay will reduce the burden of litigation on the court.

Here, CUNA Mutual has failed to demonstrate the circumstances warrant a stay pending the *RBS* appeal.  In particular, the pending motion to dismiss and motion to amend deal with substantively different questions than those likely to be addressed in the *RBS* decision, including:  (1) whether plaintiff's claims for rescission are "extra-contractual," such that they are not barred by the Wisconsin statute of limitations for actions "upon any contract," Wis. Stat. § 893.43 (CUNA Mutual's position); and (2) whether CUNA Mutual's amended allegations support only a claim for "intentional misrepresentation" rather than "fraud in the inducement," *mandating* the application of Wis. Stat. § 893.43

(Credit Suisse's position).  To delay deciding these threshold issues will serve no purpose, since neither of those arguments have been addressed by this court before, nor will they be addressed in the *RBS* appeal.

As CUNA Mutual contends, the eventual decision in the *RBS Securities* appeal may well provide helpful guidance with respect to CUNA Mutual's claims for rescission in this action, which closely mirror those it asserted in *RBS Securities*, but the court is not persuaded that a stay is necessary at this stage of the litigation.  Indeed, the issues on appeal to the Seventh Circuit in *RBS Securities* are not clearly dispositive of the issues in this case at present.  CUNA Mutual does not even argue as much.  Moreover, given the early stage of this litigation, the *RBS Securities* decision will likely have issued by the time any of the overlapping issues arise in this matter.  Regardless, no purpose would be served by delaying a decision on the presently pending, unrelated motions.

The court is certainly willing to reconsider CUNA Mutual's request for a stay if an immediate issue arises that could be directly affected by the *RBS Securities* decision and that decision has not yet issued.  Although the parties seem to have already addressed these contingencies informally, it would make little sense to require the parties and the court to proceed without the benefit of the Seventh Circuit's direction, and it would undoubtedly streamline the issues and reduce the burdens of litigation on both to await that guidance.  At present, however, CUNA Mutual has not demonstrated that a stay is warranted, and so the court will deny the motion.

MOTION TO DISMISS AND MOTION TO AMEND COMPLAINT

In response to Credit Suisse's motion to dismiss the original complaint for rescission on grounds of misrepresentation as time barred (dkt. #12), CUNA Mutual responded by filing a motion to amend its complaint to add specific allegations of intentional fraud (dkt. #24). A court should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This means that "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Credit Suisse argues that the proposed amendments are futile, meaning that they could not survive a second motion to dismiss. *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991). According to Credit Suisse, the proposed amendments remain untimely because: (1) they are barred by Wisconsin's contract statute of limitations, notwithstanding that CUNA Mutual now seeks to rescind based on *intentional* misrepresentations; (2) Iowa's statute of limitations bars CUNA Mutual's claims by virtue of Wisconsin's borrowing statute, Wis. Stat. § 893.07; and (3) CUNA Mutual has not and cannot cure the defects in its claims for rescission on the ground of mistake and unjust enrichment.

## 1. Wisconsin's Applicable Statute of Limitation

Credit Suisse relies primarily on Wisconsin's economic loss doctrine as a basis for the distinction it advances between claims for intentional misrepresentation, which it contends sound in contract, and claims for fraud in the inducement, which it contends sound in fraud.  The economic loss doctrine is a judicially created rule that precludes contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contractual relationship.  *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 19, 274 Wis. 2d 631, 683 N.W.2d 46.  In *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205, the Wisconsin Supreme Court adopted a narrow fraud-in-the-inducement exception to the economic loss doctrine, holding that "a fraud in the inducement claim is not barred by the economic loss doctrine 'where the fraud is extraneous to, rather than interwoven with, the contract.'"  *Id.* at ¶ 42 (citing *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 47, 262 Wis. 2d 32, 662 N.W.2d 652; *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).  In other words, the economic loss doctrine does not bar a tort claim for fraud in the inducement where the "fraud concerns matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract."  *Id.*  In contrast, where misrepresentations concern the quality or character of the goods sold, they "are either: (1) expressly dealt with in the contract's terms, or (2) if they are not dealt with explicitly in the contract's terms, they go to reasonable expectations of the parties to the risk of loss in the event the goods purchased did not meet the purchaser's expectations[.]"  *Id.* at ¶ 43.

Since all of CUNA Mutual's claims of misrepresentation concern the "quality or the characteristics" of the RMBS, the economic loss doctrine would bar any *tort* claim it sought

5

to maintain on the same facts. *See Kaloti*, 2005 WI 111, ¶ 45.  No doubt to avoid just such an outcome, CUNA Mutual disavows any tort claim.  Instead, CUNA seeks to amend its complaint to add allegations of intentional misrepresentation to bolster its existing claim for contractual rescission, which is not barred by the economic loss doctrine.  *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 987 (7th Cir. 2003); *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 36, 270 Wis. 2d 146, 677 N.W.2d 233.  In this way, CUNA Mutual hopes to "thread the needle" between the increasingly formidable rock that is Wisconsin's economic loss doctrine and the long-standing hard place that is Wisconsin's firm six year statute of limitations for contract claims.

The thrust of Credit Suisse's argument is that this court should extend the "extraneous/interwoven" distinction adopted by the Wisconsin Supreme Court in *Koluti* to the statute of limitations context.  Where the alleged fraud is interwoven with the contract, the argument goes, the claim itself is more "contract-like" and subject to a firm six year statute of limitations from the date of breach of contract set forth in Wis. Stat. § 893.43; but where the alleged fraud is extraneous to the contract, the claim is more "tort-like" and benefits from the more flexible six year statute of limitations from the date the fraud is discovered.

To the extent this distinction makes arguable sense in the context of the economic loss doctrine -- which the court must accept, as it is bound by Wisconsin precedent -- the court is not persuaded that it is compelled in the context of the statute of limitations.  As the Wisconsin Supreme Court has explained, the economic loss doctrine is intended to preserve the distinction between contract and tort law, since "contract law is better suited to deal with purely economic loss in the commercial arena than tort law."  *Van Lare*, 2004 WI

6

110, ¶ 25.   There is no comparable need here, since CUNA Mutual is unquestionably seeking a remedy permitted by contract law.  *Harley-Davidson*, 319 F.3d at 987; *cf. Van Lare*, 2004 WI 110, ¶ 26 (economic loss doctrine barred "*tort* recovery for a misrepresentation claim grounded in a bargained-for contract" because it would "blur the distinction we seek to preserve").

Furthermore, although Credit Suisse suggests that the tort-contract distinction implicated by the economic loss doctrine directly tracks the parties' dispute here, the actual "track" is somewhat more complicated.  Certainly, the economic loss doctrine applies along tort-contract lines, as does the distinction drawn by the *Kaloti* court in articulating the boundaries of the fraud-in-the-inducement exception.  *Kaloti,* 2005 WI 111, ¶¶42-43; *Van Lare*, 2004 WI 110, ¶ 19.  In contrast, the parties' dispute here is *not* whether to apply the tort or contract statute of limitations -- statutes of limitations governing specific tort actions appear in Wis. Stat. §§ 893.51 to 893.59 and are undoubtedly not applicable to this action for contractual rescission.  Rather, CUNA Mutual advocates for the application of Wis. Stat. § 893.93(1)(b), which governs "miscellaneous actions," including " [a]n action for relief on the ground of fraud," apparently without regard to whether it sounds in contract or tort.

On the other hand, Credit Suisse's argument finds at least some support in caselaw like *CLL Associates Limited Partnership v. Arrowhead Pacific Corp*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993).  In that case, the Wisconsin Supreme Court declined to read the discovery rule into Wis. Stat. § 893.43, holding generally that "a cause of action accrues at the time the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred."  *Id.* at 617.  While recognizing the potential that

7

certain breaches of contract could be "undetectable," practically speaking, the supreme court also noted that § 893.43 applies "to contracts in general," and that if specific contractual situations justified a more forgiving rule, "the legislature, with its greater resources for weighing policy, is best equipped to enact specific ameliorative laws." *Id.* at 613.

Of course, it could be argued that § 893.93(1)(b) is just that:  a specific law assuring the application of the discovery rule even in contract actions so long as fraud forms the "gravamen of plaintiff's complaint." *Dairyland Power Co-op. v. Amax Inc.*, 700 F. Supp. 979, 993 (W.D. Wis. 1986).

Indeed, if one were a strict textualist, the language of § 893.93(1) would end the analysis.  If not, additional counter arguments abound.  For example, § 893.93(1)*(c),* which provides a catch-all for actions "against a decedent or against a decedent's estate," states expressly that its six year statute of limitations begins to run "after the decedent's death," and states expressly that it applies to claims "whether arising on contract or otherwise." Perhaps the Legislature did not include the same language with respect to the other miscellaneous actions set forth in § 893.93, because it meant all contract actions to have the same firm six year statute of limitations set forth in § 893.43.  The Wisconsin Supreme Court could also find that § 893.93(1)(b) predated its decisions drawing a strict line between contract and tort claims, and consequently did not control the statute of limitations for rescission even if based on intentional fraud.  Certainly, this possibility cannot be completely discounted in light of *Kaloti,* which bars the recovery of tort damages from a party who intentionally misrepresented material facts in order to induce the other party to the contract, so long as those facts related to the "performance of the contract." 2005 WI 111, ¶ 42.

8

Ideally, this issue would be referred to the Wisconsin Supreme Court for resolution in the first instance, but that is not an option available to a federal district court in Wisconsin. Wis. Stat. § 821.01 (listing courts that may certify questions to the Wisconsin Supreme Court). Absent that, the court is left with the straightforward language of § 893.93(1)(b) and the Wisconsin Supreme Court's decision in *Koehler v. Haechler*, 27 Wis. 2d 275, 133 N.W.2d 730 (1965), both of which lead the court to conclude that Credit Suisse has not met its burden to show that Wis. Stat. § 893.43 applies to actions for contractual rescission on the ground of intentional misrepresentation.[1]

### 2. Wisconsin's Borrowing Statute

Credit Suisse also argues that Wisconsin's borrowing statute, Wis. Stat. § 893.07, bars CUNA Mutual's claims with respect to eleven of the thirteen certificates at issue. Under that statute, "[o]nce a cause of action is determined to be 'foreign,'" the court is to apply "either the law of the state where the cause of action arose or Wisconsin's law, whichever is shorter.'" *Abraham v. Gen. Cas. Co. of Wis.*, 217 Wis. 2d 294, 304-05, 576 N.W.2d 46 (1998) (quoting *Guertin v. Harbour Assurance Co.*, 141 Wis. 2d 622, 631, 415 N.W.2d 831 (1987)). "Wisconsin considers a cause of action 'foreign' if the underlying injury occurred outside the state." *Faigin v. Doubleday Dell Publ'g Grp., Inc.*, 98 F.3d 268, 269 (7th Cir. 1996). In the context of a contract claim, this means the breach -- the "final significant event giving rise to a suable claim" -- must occur outside Wisconsin. *Abraham*, 217 Wis. 2d at 311; *see also Terranova v. Terranova*, 883 F. Supp. 1273 (W.D. Wis. 1995).

---

[1] Credit Suisse points out that the *Koehler* court applied the fraud statute of limitations to a rescission claim without analysis, likely because the parties do not appear to have disputed its applicability. Nevertheless, the case provides at least an implicit recognition by the Wisconsin Supreme Court that the fraud statute of limitation is appropriately applied to contractual actions in certain instances.

The parties assume here that the "final significant event" is CUNA Mutual's decision to purchase the certificates, since the amended complaint does not challenge any post-purchase conduct on Credit Suisse's part.

Adopting the date of purchase as the relevant event, CUNA Mutual has not *necessarily* pled a foreign cause of action. Although one of the purchasing entities, CMLIC, was at that time located in Iowa, CUNA Mutual's amended complaint indicates that a single individual, Mark Prusha, purchased the certificates for all of the entities, regardless of which entity is is officially listed as the "purchasing entity." (Am. Compl. (dkt. #25-1) ¶ 174.) The complaint also indicates that MEMBERS Capital Advisors, Inc., which is headquartered in Madison, Wisconsin, is the entity that made the decision to purchase each of the thirteen certificates at issue. (*Id.* at ¶ 135.) At the motion to dismiss stage, CUNA Mutual is entitled to the benefit of the reasonable inference that the final significant event for purposes of its rescission claims -- that is, the purchase of each RMBS -- occurred in Wisconsin, regardless of whether Iowa entity CMLIC was one of the "purchasing entities." (*See id.* at ¶ 164 & Table 2.)

### 3. Other Claims

CUNA Mutual also advances its own statute of limitations argument, contending that this court incorrectly determined in *CMFG Life Insurance Company v. UBS Securities, LLC*, 30 F. Supp. 3d 822 (W.D. Wis. 2014), that Wisconsin's statute of limitations for "[a]n action upon any contract, obligation or liability," Wis. Stat. § 893.43, governs rescission claims predicated on strict liability or negligent misrepresentations. CUNA Mutual contends that Wisconsin case law distinguishes between actions for relief *upon* a

contract and actions to *disclaim* a contract, citing cases like *Tyler v. Schoenherr*, 344 Wis. 2d 124 (table), 2012 WL 2847917 (Wis. App. July 12, 2012).

As an initial matter, CUNA Mutual failed to advance this argument until its reply brief.  Arguments first raised in a reply brief are, of course, waived.  *United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir. 2000); *Sunbeam Prods., Inc. v. Homedics, Inc.*, 587 F. Supp. 2d 1055, 1058 (W.D. Wis. 2008).

In any event, CUNA Mutual's reliance on that technical distinction between actions *upon* contract and actions to *rescind* contract to resurrect its other bases for rescission is not only without support in Wisconsin law, but would actually endanger its remaining claim for rescission based on fraud under Wisconsin's economic loss doctrine.  Certainly, the cases CUNA Mutual cites do distinguish between the two, but only in the context of noting that parties who discover actionable fraud have the option to elect between two remedies:  (1) they may seek to rescind or (2) to ratify and "sue upon" the contract.  *See, e.g.*, *Am. Steel Foundries v. Laughlin*, 30 F.2d 139, 142 (7th Cir. 1928); *Schlotthauer v. Krenzelok*, 274 Wis. 1, 79 N.W.2d 76 (1956).  None of the cases relied upon by CUNA Mutual suggest that Wis. Stat. § 893.43 is meant only to apply to actions in which the party elects the latter remedy, nor is the court aware of any Wisconsin case that applies a different statute of limitations to the same cause of action depending on the *remedy* the plaintiff elects to pursue.[2]  Indeed, CUNA Mutual's position is undermined by Wisconsin case law that describes Wis. Stat. § 893.43 in far broader terms.  *See, e.g.*, *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 15, 308 Wis. 2d 103, 746 N.W.2d 762 ("On review, Weisflog and WSGI argue that the

---

[2] An exception might exist by virtue of statute or by contract, but no one has contended either is true here.

Stuarts' HIPA claims and their negligence claims were barred by the six-year statute of limitations set forth in § 893.43, *which is applicable to contract actions*[.]") (emphasis added).

In contrast, Credit Suisse maintains that CUNA Mutual's claims for (1) rescission on the grounds of mistake and (2) unjust enrichment remain time-barred under the logic of *UBS Securities*. The court agrees. Indeed, CUNA Mutual makes only a half-hearted attempt to demonstrate that those claims are timely, and again only in its reply brief. Its single-paragraph argument first takes issue with this court's decision in *UBS Securities* -- an argument that it waived by failing to raise the issue in its opening brief. The only other argument CUNA Mutual offers is a conclusory statement that none of the cases upon which Credit Suisse relies establish the statute of limitations for any claim in this case. At most, CUNA Mutual cites to *Boldt v. State*, 101 Wis. 2d 566, 305 N.W.2d 133 (1981), a case in which the Wisconsin Supreme Court held that a claim based in quasi-contract, though subject to the six-year statute of limitations for a contract action, might be equitably tolled. Perhaps CUNA Mutual is suggesting that its own quasi-contract claims are likewise subject to equitable tolling, but it offers *no* reason this should be so (and *Boldt*, the only case it cites, is factually inapposite, applying statutorily-established tolling provisions applicable in cases where the plaintiff is insane, imprisoned or both). Accordingly, the court will deny the motion to amend with respect to claims based on mutual mistake and unjust enrichment.

This decision in large part moots Credit Suisse's pending motion to dismiss,[3] except the request that the court strike CUNA Mutual's jury demand. "Because rescission is

---

[3] To the extent that the motion to dismiss raised additional arguments not addressed in the parties' briefing on the motion to amend the complaint and that remain applicable to CUNA Mutual's amended complaint, Credit Suisse is free to raise them in a separate motion to dismiss directed toward the amended complaint, specifically, or as part of any summary judgment motion it may bring.

primarily an equitable action, there is no right to a jury trial[.]"  2 *Contract Law in Wisconsin*, § 14.25 (4th ed. 2013); *see also Little v. Roundy's, Inc.,* 152 Wis. 2d 715, 772, 449 N.W.2d 78 (Ct. App. 1989).  Accordingly, the court will strike CUNA Mutual's jury demand.

ORDER

IT IS ORDERED that:

1) Defendant Credit Suisse Securities (USA) LLC's motion to dismiss the complaint and strike the jury demand (dkt. #12) is GRANTED IN PART and DENIED IN PART as moot.

2) Defendant's motion for judicial notice (dkt. #15) is DENIED as moot.

3) Plaintiffs' motion to amend the complaint (dkt. #24) is GRANTED IN PART and DENIED IN PART, consistent with the opinion above.

4) Plaintiffs' motion to stay (dkt. #35) is DENIED.

Entered this 5th day of August, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

13